No. 24172.

Celeste W. Rumney *v.* The Public Utilities Commission of the State of Colorado, Henry E. Zarlengo, Howard S. Bjelland and Edwin R. Lundborg, the individual members of said Commission.

(472 P.2d 149)

Decided July 20, 1970.

KENUFF D. WOLFORD, HERBERT M. BOYLE, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, ROBERT LEE KESSLER, Assistant, WARREN D. BRAUCHER, Assistant, JOHN E. ARCHIBOLD, Assistant, ROBERT E. COMMINS, Assistant, for defendants in error Public Utilities Commission of the State of Colorado and the individual members thereof.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

 IN this writ of error to a judgment of the district court affirming a Public Utilities Commission decision revoking and cancelling two private carrier permits owned by plaintiff in error Rumney several arguments are assigned. We hold, as did the trial court, that the Commission regularly pursued its authority and that its findings and conclusions are supported by and are in accordance with the evidence.

Celeste W. Rumney is the owner of Private Carrier Permit No. B-729 and Permit No. B-729-I, which authorize operations as a Private (Contract) Carrier by Motor Vehicle for hire for the following:

"Transportation of freight from point to point within the state of Colorado, in both intrastate and interstate commerce. All interstate authority is subject to the provisions of the Federal Motor Carrier Act of 1935 as amended."

The authority in question, with the approval of the Commission, was purchased from George Osler by Walter Rumney, husband of Celeste Rumney, in 1944. It was owned and held in joint tenancy by Walter and Celeste Rumney until the time of Walter Rumney's death in 1962, when Mrs. Rumney became the sole owner by operation of law.

On February 27, 1967, the Commission entered an order to show cause and notice of hearing concerning the motor vehicle operations under Permit No. B-729 and Permit No. B-729-I. After notice to all interested persons, firms or corporations, a hearing was held. No motor carriers appeared at the hearing other than counsel for Contract Carrier's Conference who was denied permission to intervene, but who was allowed to appear on behalf of the Conference in the position of *amicus curiae*. The Conference's position is substantially that of Rumney, and will not be separately discussed.

After conclusion of the hearing the Commission entered Decision No. 70070 revoking and cancelling Rumney's permits. She timely filed a petition for rehearing which was granted. The rehearing was held on February 5, 1968. On January 27, 1969, the Commission entered Decision No. 72495 revoking and cancelling the permits. The chairman of the Commission dissented to the revocation order on the grounds that the infractions of the Commission's rules which were found by the Commission should have carried the penalty of a fine rather than revocation of the permits.

I.

Although asserting that the evidence does not support the action of the Commission, the argument of Rumney essentially is that the Commission action is too harsh, *i.e.*, that the punishment consisting of taking away completely Mrs. Rumney's valuable property right in the permit was not warranted by the infractions of the law and Commission regulations as found by the Commission. Plaintiff in error would have this court adopt the view of the dissenting commissioner who urged that the penalty should be no more than a fine.

We know of no authority, and none has been cited, that vests in the reviewing courts under the Colorado law the power to overturn a decision of the Commission which it has the authority to make. If the evidence supports a finding that the statutes governing

the regulation of the particular carrier and the rules and regulations of the Commission have in fact been violated, it is clear that the Commission has the statutory authority to revoke the violator's PUC permit. C.R.S. 1963, 115-11-10. Rule 7 of "The Rules and Regulations Governing Private Carriers by Motor Vehicle (Decision No. 54133, Case No. 5177)" of the Public Utilities Commission further provides:

"Any permit may at any time be revoked, suspended, altered, or amended by the Commission upon at least ten (10) days notice to the private carrier by motor vehicle and an opportunity to be heard, for any of the following reasons:

"(a) Violation of or failure to comply with any statutory enactment concerning private carriers by motor vehicle.

"(b) Violation of or failure to comply with the terms and conditions of his or its permit.

"(c) Exceeding the authority granted in his or its permit.

"(d) Violation of or failure to observe and comply with any lawful order, rule, or regulation of the Commission."

Any one of the violations found by the Commission, if supported by the evidence, could be considered by the Commission to be grounds for revocation of the authority.

An examination of the record reveals that there is ample evidence to support the findings made by the Commission. Mrs. Rumney, an elderly and semi-invalid woman, entered into various agency agreements and leasing agreements which resulted in the use of her permits in a manner not permitted by law.

The evidence consisted of the results of investigations of the different operations under the name of Rumney Truck Service made by the staff of the Commission. There was contradictory evidence offered by Mrs. Rumney at the first hearing, and by witnesses on her behalf at the rehearing and exhibits were presented to establish, *inter alia*, that she maintained control over the Denver operations. The Commission had before it, however, substantial evidence upon which it could, and did, base its

findings and resolved the conflict against Rumney. Illustrative of such evidence is the testimony concerning the use of emergency letters by Rumney. Rule 13, "Rules and Regulations Governing Private Carriers by Motor Vehicles," *supra,* permits the use of emergency letters in cases of emergency or unusual demands for transportation from any customer with whom such carrier has a contract for such service.

It was found by the Commission that for the summers of 1965 and 1966 certain emergency letters were used by Rumney for the purpose of enabling Gunnison Transportation Company to haul logs from the Glenwood Springs area to Denver. The testimony of staff witness, Jindra, together with staff exhibit 2, established that Gunnison Transportation Company engaged in the hauling of logs and poles supposedly under emergency letters for and on behalf of Rumney, resulting in revenues of $14,575. Gunnison Transportation Company kept $14,420 of this and approximately $155 went to Rumney. Rather than Rumney receiving all of the money from this operation and paying back to Gunnison some amount for the use of the equipment and paying Gunnison for the salaries of the drivers, the evidence introduced through Mr. Whittemore, Gunnison's accountant, showed that he had set up a bank account in the name of Rumney Truck Service in Gunnison, but that he was the only one authorized to draw checks against the account. The emergency letters were thus improperly used to enable Gunnison to set up a transportation service for which it had no authority. What, in fact, happened was that Rumney received a slight override for the use of her permit. This would constitute a violation of Rule 14 of the Commission rules which states in pertinent part: "No Private Carrier by motor vehicle shall permit or authorize any other person, firm, or corporation, whether a motor carrier or not, to operate any vehicles, except emergency vehicles permitted by these Rules, under his

or its permit, without first having obtained the consent of the Commission in writing. * * *"

As stated, there was testimony to support the other findings of the Commission. No useful purpose would be served by a further detailing of the evidence here, since any one of the findings alone would support the Commission's order.

## II.

██ ██ It is contended that the Commission erred in failing to give proper consideration to a judgment of the district court of Weld County in civil action No. 18386, wherein, on December 1, 1967, one V. H. Jorgensen filed an action seeking a court order for specific performance to require Rumney to transfer to him the permits which were revoked by the Commission order under review herein.

In that suit Jorgensen alleged that he was the assignee of an option to purchase Rumney's authority; that pursuant to the terms of the option agreement there had been paid to Rumney the sum of $29,864.58, and that he was ready, willing and able to pay the balance of the purchase price upon approval by the Public Utilities Commission of the transfer of the permits.

The court, after issuing a temporary restraining order to prevent Rumney from contracting to sell her authority to a third party, determined that an additional $10,000 should be tendered to the court by Jorgensen in payment of any balance determined to be due Rumney as full payment for the authority. On February 1, 1968, the court entered its judgment directing Jorgensen to authorize the clerk of the court to release the $10,000 to Rumney and ordered Rumney to effectuate transfer of the permits to Jorgensen and to avoid cancellation of the permits. In accordance with the court's order, an application was filed with the Commission on February 7, 1968, for transfer of the permits. This application was made approximately one year after the Commission had issued its show cause order concerning operation under these

permits and soon after the rehearing on the Commission's first decision to revoke the permits was held.

The application for transfer was never considered by the Commission; the permits were cancelled on January 29, 1969, and the application for transfer subsequently dismissed by the Commission.

It was not error for the Commission to fail to consider the district court action. It was not a party to it nor bound by it. No authority to operate under a PUC permit can be transferred without order of the Commission. (Rule 6, "Rules and Regulations Governing Private Carriers by Motor Vehicle," *supra*). Jorgensen is presumed to have known this fact from the time that he obtained the option to purchase the authority. Yet he engaged in what the Commission found to be an unauthorized use of the permits in question for several years and sought specific performance of his option at a time when the continuation of the permits was in serious question. At the rehearing he testified that he was agent for Rumney. The actions of Rumney in dealing with the permits with Jorgensen merely point up the further violations of the statute and Rules and Regulations of the Commission which support its decision.

### III.

It is next contended by Rumney that the Commission abused its discretion in cancelling the permits in view of its decision in other cases involving a show cause order where the Commission reinstated authorities of violators on payment of a fine.

The law in Colorado, however, is well settled that as to its own prior decisions the Commission is not bound by any doctrine similar to that of *stare decisis*. *B.D.C. Corporation of Colorado v. Public Utilities Commission*, 167 Colo. 472, 448 P.2d 615; *B & M Service, Inc. v. Public Utilities Commission*, 163 Colo. 228, 429 P.2d 293.

Judgment affirmed.

MR. JUSTICE KELLEY not participating.